Good morning. May it please the court, my name is Mary Jean Chan and I represent the United States in this appeal. I plan to reserve two minutes for rebuttal. Under this court's post-Beckles case law, Chavez-Cuevas, Barragan, and Johnson, California robbery in violation of California penal code section 211 remains categorically a crime of violence under section 4B1.2 of the sentencing guidelines. So this court should remand for resentencing. And under section 3742G, 18 U.S.C. 3742G, upon remand, the district court must use the addition of the guidelines that was applicable at the time of the original sentencing. And furthermore, amendment 798 is not relevant to resentencing because under the analysis that this court engaged in in the recent case, U.S. versus Atkins, the relevant portions of amendment 798, that is, the deletion of the residual clause, as well as the narrowing of the definition of extortion, are both substantive amendments that are not clarifying and therefore not retroactive. Well, Atkins didn't directly deal with the extortion piece, did it? No, it didn't, Your Honor. It does deal with the deletion of the residual clause, but I think the analysis is instructive. This court, as it did in Morgan and in other cases, looks primarily at three factors to determine whether a portion of the amendment is retroactive or not. The first factor is whether the commission, the sentencing commission, lists it as a retroactive amendment. In this case, the same analysis applies to both because the sentencing commission did not list amendment 798, any portion of it, as a retroactive amendment. The second factor is whether the commission talked about it as a clarifying amendment. It didn't talk about it in the context of the residual clause, nor did it do so in the context of narrowing the extortion definition. In fact, the words that the commission used in the reasons for the amendment are pretty clear. They say that we're going to add a definition. We are going to narrow the definition. And those are all signal substantive changes, not just a clarification of something that, you know, maybe there were two positions about what extortion meant and the commission is going to explain which one of those is correct. On Bankston, you can win if it's not retroactive and you don't have to go to your second level of argument, is that correct? Whereas Nichols is a different situation because a different, timing wise, occurred at a different time. That's exactly right. So if it's not retroactive in this case, then what it means doesn't really matter to Mr. Bankston. Of course, we think that it means that extortion has been shaved off a bit, not gutted as the defense would sort of argue. And so either, even if it did apply, it wouldn't make a difference in Mr. Bankston's case because California robbery, even under the amended definition of extortion, still under Becerra-Lopez, qualifies as a crime of violence. But we don't have to guess that. Counsel, do you think we should take into consideration that this was an amendment to the commentary rather than the guideline itself? Is that significant? Well, it wasn't an amendment to the commentary, right? So it is an amendment to the commentary, Your Honor. The amendment as a whole moved extortion from the commentary portion of it to the guideline portion of it so that to clarify, because there was debate, as was clear in this particular case, that because extortion was listed in the commentary, or robbery was listed in the commentary, I'm sorry, that robbery and other — I'm sorry, I'm wrong. Let me take that back. You're right, Your Honor. It was merely an amendment to the commentary. As to the extortion, but the removal of the residual clause was not. Right. So the amendment is pretty broad. It does have different segments. And you're right, Your Honor, to say that just because Atkins deals with the residual clause, we shouldn't automatically assume that that pertains to every single part of the amendment. But, Judge Wallace, you're correct that the amendment here is really just to the definition of extortion, and in some ways it is then should be given slighter weight. But the amendment, the third factor that the Court discussed in Atkins and other cases was whether the amendment resolves some sort of circuit split. And if it does, then it tends to show that there was a clarification. In this case, it wasn't doing so. There was no circuit split. Nardello was the law of the land, and it said under the Supreme Court precedent what the extortion was. It included threats — obtaining of property by threats to non-tangible property. That was not really disputed. And what the Sentencing Commission did was to shave that part of the definition of extortion off for purposes of crime and violence. My point is that the Eleventh Circuit has held that it's significant that it's in the commentary rather than the guidelines itself. And it looks — and I wondered whether or not — I don't think we've made the decision in our circuit on that issue. But I just want to know, is that significant as far as how we should come out on this case? No. So, Your Honor, I think that we're not talking about the sort of the amendment aspect of the case. We're talking about the fact that extortion — robbery is listed in the commentary. Am I understanding your question correctly? No, it shouldn't. It shouldn't make a difference because the guidelines — the definition of what a crime of violence is split between what's in the guideline portion and what's in the commentary. Stinson says very clearly that the commentary part of the definition has binding effect as long as it's not contrary to statute or the guideline. In this case — My suggestion is that we hear from the other side because we haven't really heard their argument. It's a kind of a backwards case in a way. So if you want to have some time for rebuttal, it might make sense for you to wait for the — to hear what — Sure, Your Honor. But I do want to make sure that I've addressed Judge Wallace's question, so I plan to do that when I come back on rebuttal. Well, you can address it if you want to. Go ahead. Well, I'll sit down. Thank you. Good morning, Your Honors. May it please the Court. Grace Delora for Appellee Delwan-Bangston. Before I address — Are you contesting the retroactivity point anymore after Atkins or not? Yes, Your Honor. So I do acknowledge that Atkins has a holding at this time that the removal of the residual clause is a substantive change. There are some moving pieces in that. One of them is the failure to sort of recognize the issue in Judge Acuda's dissent about whether or not you can, in fact, apply the residual clause even if it remains in the guideline and not commit procedural error. That raises some other issues with some of the precedent that has come down. Atkins also remains — although it is currently published, the time for a PFR-EB has not passed, and Atkins did have to consider that issue on supplemental briefing. It wasn't initially raised by the parties, and so — Well, but is it relevant on the issue of retroactivity? All right. Would you agree that it is? Yes, it is relevant, Your Honor. It speaks directly to the residual clause. I do want to agree — But I'm asking as to retroactivity, as to the issue of retroactivity. Because if — it would seem to me that your client's in a slightly different position than the other individual because in terms of timing. And if it's not retroactive and you're under — prior to any changes, then that could sink your ship right there. There could be a different result in your case than in Nichols if — depending on the retroactivity issue. Yes, that is certainly true. The retroactivity issue is presented in our case. Mr. Bankston was sentenced under 2015 guidelines. Mr. Nichols was not. He was sentenced under the 2016 guidelines. So regardless of the outcome in Atkins — and I'm sure Mr. Foukouri from our office will address that more directly as well — the retroactivity is presented in our case, not in the Nichols case. So in that sense — But my understanding is that — I think that your argument about Judge Akuta's dissent is that even if it's not retroactive, you still can prevail in some fashion? Yes, Your Honor. The argument would be that even if it is not retroactive, so the residual clause remains in the guideline on a resentencing, then that it's procedural error to apply the residual clause. Because the case law that you have to rely on fundamentally roots out of James and the ACCA case law, which the Supreme Court has overruled. And so even if the guideline remains, you then could only — you would have to ignore it and then only address whether or not Bessara-Lopez remains good law with the new extortion definition, which we would submit it does not. Now — I don't understand that. Why wouldn't you then consider whether Bessara-Lopez remains good law without regard to the ACCA cases? Well, Your Honor, Bessara — But with the residual clause there. So if it is not error to apply the residual clause, so if the residual clause can be applied using the old cases without the issue that Judge Akuta raised in her Lee opinion — Well, I just thought she raised — the main issue she raised was that you — was what you said, which is that the case law under the ACCA is no longer good case law. Then we just start afresh and we look — we look at — was Bessara-Lopez a guidelines or an ACCA case? It is a guidelines case, Your Honor. All right. So what's the problem? So Bessara-Lopez addresses the question of whether or not the generic definitions of robbery and extortion together can subsume all of 211. Right. And so that raises the issue, then, of the new extortion definition. Why? I'm not understanding you. Because under Bessara-Lopez, the extortion definition issue was the generic extortion definition. Well, I understand that, but why don't you look at Bessara-Lopez as of 2015? Why are we looking at the new extortion definition for somebody who was sentenced before the new definition came into effect? I understand, Your Honor. I'm sorry. I was confused. So we do have the issue that 3742 instructs the district court to apply the guidelines at the time of the original sentencing. Now, the 2015 guidelines direct the district court to apply the guidelines in place on the date of sentencing. So we would raise that issue in the district court. But, Your Honor, it is correct that if under the — if we have to go back and do the definition of extortion, and that would be problematic, which is why the question of whether or not the amendment is retroactive on appeal comes into play. We can still invoke that on appeal despite 3742. But you're not arguing — I'm just trying to get the lay of the land here. Yes, Your Honor. I understood that your point about Judge Acuda's dissent was that even if we're looking at it in 2015, that there is a problem with applying Bestreau-Lopez after Johnson despite Peckels. Is that not your argument? That is — it comes in two parts, which I think is where I'm confusing the Court. The Amendment 798 has both the removal of the residual clause and the narrowing of the extortion definition. And as our case law indicates, the different parts of the amendment can function retroactively in different ways. The issue that we have— You're really confusing me. I'm trying to get you to understand whether you are arguing that. Forget retroactivity. Looked at in 2015, given Johnson, there's still a problem. Are you arguing that or not? Yes, Your Honor. All right. Well, you are agreeing with that because you keep getting back to the 2016 amendments. Yes. And so I should be more clear. The — we can only succeed on the error question rather than the harmless error question under the 2015 guidelines if we can both close down the residual clause and say it's procedural error to apply this, but because the narrowing of the extortion definition is retroactive on appeal, we should be able to take advantage of this. So this Court should say it is procedural error to apply the residual clause, and Amendment 798 is retroactive on appeal. I see. So you're not arguing the first should dependently of the second. Okay. So, Your Honor, that is what would have to happen in our case under the 2015 guidelines for us to avoid the error issue. And in light of recent case law, I acknowledge that that is more difficult for us to do. In light of Atkins? In light of Atkins, yes. I know that you know your case, but it — I feel like Judge Owens in one of his concurrences talking about how everything — there is no common sense, and people listening out there, in terms of where we've gotten with all of this, is the theater of the absurd in terms of to try to — I think it will be soon when murder is not a crime of violence somehow under the case law. And I think that would probably — the Supreme Court would probably say murder still is a crime of violence. But everything else seems now up in the air. Certainly Your Honor is right. There have been a number of judges who have expressed frustration with the categorical approach and with the results that we see. I do want to put in sort of a positive plug for the categorical approach, which is that I think cases like 211 particularly bring these issues up, but in a way that really 211 is unique. It's a state statute that subsumes a very significant amount of conduct, which we don't necessarily see in other state robbery statutes. And so this is part of the ongoing, long fight that's been happening about the extent to which 211 covers a really wide range of conduct, and in part through the interpretation of the state courts. But the categorical approach does give us a very straightforward, consistent way to how do we take the whole universe of state case law and state offenses, which have different names, different definitions, different interpretations, and then impose sort of order through Federal statute. And I think Your Honor is absolutely correct. We see these cases that sometimes feel a bit counterintuitive. Well, besides which, I mean, presumably the whole problem is fixable by Congress if it wanted to fix it, particularly with regard to the guidelines as opposed to the criminal statutes. Absolutely, Your Honor. I just wanted to mention briefly, we have made a harmless error argument, and I would encourage the Court to take a look at it. Melina Martinez is the Supreme Court's recent decision on this issue, and really directs all of us to look to the colloquy in district court. So the record that a district judge makes to justify its decision, and that when a district judge clearly considers two different potential guidelines ranges, and then fashions a sentence and discusses at length reasons for that sentence. But wasn't this the case where the judge said, expressed a fair amount of frustration about not being able to use the robbery and sentence on top of the guidelines for that reason, essentially? Yes, Your Honor. And I think in part the reason that a harmless error result makes sense here is specifically because the district court did that. The district court didn't. Well, but that would seem to be a pretty good indicator that the district court would give a different sentence, but for the district court's interpretation. So if we think the district court's wrong here, it would seem that the district court should get a crack at doing it under the correct case law. Now, maybe you could get the same sentence, but there certainly seems to be a little bit of an indication that the district court would have given a different sentence. If I may respond, I'm going to run out of time, but I just want to briefly respond. I think what matters here is the way the district court talked about her disagreement. So if she had said something to the effect of, well, I think this is ridiculous, but I'm stuck with this, so I have to do this, that would likely be the right result. I think what you actually see in Judge Olson's colloquy is she says, I disagree, and I think the sentencing commission is going to fix this. So while I have to calculate this guidelines range in this way, I'm going to give a sentence that I think is appropriate in light of my disagreement about the way this case is being treated, and particularly in light of Mr. Bankston's history and the facts of his offense here. So where we see the other guidelines range and that this was the sentence that was appropriate for Mr. Bankston given his offense and his history. And I think that puts us in that narrow range of cases where even an error in calculating the guidelines range doesn't seem to be appropriate. Doesn't necessitate a remand. Okay, your time is up. Thank you very much. Thank you. Okay. So I think that they, I just want to clarify that there are two bases by which California robbery qualifies as a crime of violence. The first one is under the Becerral Lopez line of cases in which it is under the enumerated offenses. It's the combination of the enumeration of robbery and the enumeration of extortion that make it a crime of violence. It has nothing to do with the residual clause. That line of cases has been attacked by the defense for, as Judge Wallace said, having part of the enumeration that is the robbery portion of the enumeration in the commentary as opposed to above line. The amendments in 2016 clarified that robbery was always supposed to be one of the enumerated offenses. And the language for the reason of the amendment states, as always, these crimes are part of the enumerated offenses. We delete the residual clause, but we are not doing any violence to the enumerated offenses clause except to. Let me just, let me rephrase a little. Okay, in United States v. Molinar, we held that for a state crime to be equivalent to generic robbery, it must require property to be taken from a person or a person's presence by means of force or putting in fear. Your interpretation of the 2016 amendment to the definition of extortion seems to be materially indistinguishable from generic robbery. Is extortion distinguishable from generic robbery? If not, why would the sentencing commission include both in the enumerated offenses? So I think my colleague will be talking about this more in the next case, but it's distinguishable because robbery generically requires harm to the person. So. And also it requires physical presence. Right. That's the biggest reason, and immediacy. It does. It requires all those things. You could have extortion without, you know, by writing somebody a letter, you don't have to be there. And you can also, and it doesn't have to be immediate. You can say in three weeks I'm going to do something to you. So the Becerra-Lopez line of cases, as well as, you know, Berragon, the most recent case that kind of upheld Becerra-Lopez, they essentially say that given that you have to get the extortion, given that extortion requires sort of its, there's also sort of the willingness of giving it up, because the inducement has to be by willingness, that that has been resolved by this court. And I don't understand, because it's not really consent. I mean, it's no more consent than standing next to somebody and say give it to me or I'm going to shoot you, or I write you a letter, give it to me or I'm going to shoot you tomorrow. Well, but this line, but the point being that there are many reasons why you might say that they don't, are totally closed, but this court has, through its line of cases, basically closed that daylight and said that, that to the extent that robbery, generic robbery. Well, they didn't close the daylight. They said that if you take one and two, then you get three, i.e., California robbery, but they didn't say that you could do it without one and two. Right. So it's saying that essentially, that because generic extortion is or was listed in the commentary, I'm sorry, not in the commentary, in the guidelines, that that covers anything that generic robbery doesn't for purposes of California robbery. So that's been pretty well established. It's really foreclosed. Can I go back a minute? You said something, I think you misspoke before, although I'm not sure what difference it makes. You said that robbery was in the original enumerated offenses, but it isn't, wasn't. Extortion was, but robbery wasn't. Right. Robbery is or was clause did matter in 2015. No, no, Your Honor, because robbery is enumerated in the commentary, and I think this is. Oh, right, but that's not enumerated in the guideline. But under Stinson, this Court is required to look at both the commentary and the guideline, and in fact, Barragan does that. Well, but the commentary has to be attached to a guideline. Right, and the guideline. Which guideline is it attached to if it's not the residual clause? 4B1.2, which is the crime of violence. Just like 2L1.2 defines the entirety of crime of violence in the commentary. And I think this is the point that Judge Wallace is. I'm sorry, Your Honor, I don't understand what you mean. 4B1.2A says the term crime of violence means any offense, and it has one, which is the elements, and two, which are the enumerated offenses, and three, which is the residual clause. The commentary has to be attached to something. It's attached to the enumeration offenses clause, and that's what the. But the enumeration offenses clause doesn't have robbery. But it's expanded upon. So if you look at the commentary, it lists a number of enumerated crimes that are crimes of violence, and then it says, and other crimes also to the extent that they meet the force clause or the residual clause are also crimes of violence. And the amendment in 2016. Your argument is that somehow you have this crime of violence definition attached to no subsection of 4B1.2. No, that it's attached to the enumerated offenses clause, so that it's an add-on list. You mean subsection 2 that says it's burglary of a dwelling, arson, or extortion, but doesn't have robbery, and you're saying, but it does have robbery? Correct. And I think if you look at the Baragon case. That's really non-convincing. If the Court is convinced by that, the residual clause is not based. Well, I don't understand it. It's not that I don't buy it. I don't understand what you're saying. I'm saying that the list is partially enumerated in the guideline and partially expanded upon in the commentary, and that if you look at Amendment 798, it states that that collective list, if you look at the guideline list as well as the commentary list, collectively constitutes the enumerated offenses clause. No, because we're taking out the residual clause and we're putting the stuff in the guidelines instead, i.e., this was otherwise attached to the residual clause. If the Court wants to take that definition, the residual clause is still good under Beckles. So the fact that it was enumerated in the commentary, and if that was the hook or the textual hook of it, that doesn't go away, because under Beckles, the residual clause is fine. And even if you consider that vague, despite what Beckles says, the fact that it's been enumerated by the Commission means that that vagueness problem goes away, because it has been enumerated as to this. Well, that sounds like the most sensible thing to me. I'm glad something I said is sensible. So if the Court wants to go with that argument, that's fine. But either way, under either the residual clause basis or under the enumerated offenses basis, both robbery and extortion were enumerated. And then there's a second argument that the government makes, which is that under Prince, that extortion and the residual clause freestanding also serve as a basis for finding that California robbery is a crime of violence. Okay. You've used your time up. Thank you both. Thank you very much. We ask for reversal. Interesting argument, a complicated case. We will go on to its friend in relation, United States versus Nichols.
judges: Wallace, Berzon, Callahan